**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
SUSAN RUSSO, on behalf of herself and all
others similarly situated,

         Plaintiff       DOCKET NO.

                CLASS ACTION COMPLAINT
                AND DEMAND FOR JURY
                TRIAL

     v.

AWOL VISION TECHNOLOGY, LLC,

          Defendant

-----------------------------------------------------------X

Plaintiff SUSAN RUSSO ("Plaintiff" or "Ms. Russo"), individually and on behalf of herself

and all others similarly situated (collectively, "Plaintiffs"), by and through her undersigned counsel,

brings this action against Defendant **AWOL VISION TECHNOLOGY LLC** ("Awol Vision" or

"Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§ 12181 *et seq.*, the New York State Human Rights Law, Article 15 of the New York Executive

Law §§ 290 *et seq.* ("NYSHRL"), the New York State Civil Rights Law, N.Y. Civ. Rights Law §§

40 *et seq.* ("NYCRL"), and the New York City Human Rights Law, N.Y.C. Administrative Code §

8-107 *et seq.* ("NYCHRL"), arising from Defendant's failure to ensure that its e-commerce Website,

www.awolvision.com, is accessible to blind and visually impaired individuals.

### INTRODUCTION

1.   Plaintiff **Susan Russo** is a resident of Manhattan, New York, and is permanently

disabled due to legal blindness. Ms. Russo suffers from diabetic retinopathy, a severe and

progressive retinal disease recognized as one of the leading causes of permanent vision loss in

working-age adults. As documented and confirmed in the New York State Office of Children and

Family Services Report of Legal Blindness completed by Dr. Jonathan Feistmann, M.D., of N.Y.C.

Retina, dated April 25, 2025 (Exhibit A), Ms. Russo's visual impairment meets both federal and New York State criteria for legal blindness. Dr. Feistmann confirms, and the formal certification reflects, that Ms. Russo's condition renders her legally blind with no corrective restoration available, significantly impairing her ability to visually interpret printed or digital information without assistive technology.

2.      Ms. Russo is a proficient user of screen-reading technology and keyboard navigation, which she relies on to access digital environments independently. Because she cannot visually perceive website content without accessible coding, she depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive controls, and screen-reader-compatible navigation in order to browse, evaluate, and purchase goods online. For blind consumers such as Ms. Russo, screen-reading software is not optional; it is the only means by which they can independently access the internet.

3.      According to the United States Census Bureau, millions of Americans live with significant visual impairments, including more than two million who are legally blind. In New York alone, hundreds of thousands of residents are blind or visually impaired. Congress enacted the Americans with Disabilities Act to eliminate discrimination against individuals with disabilities and to ensure full integration, independent living, and equal opportunity. These protections extend to digital spaces. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web.

4.      The internet has become an indispensable tool for modern life. It is a primary means of shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users

take for granted.

5.      Screen-reading software works by converting digital content into synthesized speech or refreshable Braille. For this technology to function, website content must be capable of being rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain broken ARIA references cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites, and are denied equal access to the goods and services offered thereon.

6.      The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

7.      Plaintiff brings this civil action against Defendant Awol Vision Technology LLC for its failure to design, construct, maintain, and operate its highly interactive website, www.awolvision.com, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of full and equal access to its website — and therefore to the goods and services offered therein — constitutes a violation of Plaintiff's rights under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, the NYSHRL, the NYCRL, and the NYCHRL.

8.      On **February 11, 2026**, **March 24, 2026**, and **May 19, 2026**, Plaintiff attempted to access Defendant's website using screen-reader technology in order to research and purchase premium home theater technology products offered for sale. Plaintiff specifically sought to purchase:

**(1) The AWOL Vision LTV-3500 Pro 4K Triple Laser Ultra Short Throw Projector** — Defendant's flagship ultra short throw ("UST") projector, featuring triple-laser RGB technology, 4K resolution, and a native 2,500 ANSI lumens brightness output, listed at an MSRP of $3,999 — for herself and her household, as a dedicated home entertainment system to be operated independently and by voice command;

**(2) The 100"–150" Cinematic ALR Screen** — Defendant's ambient light rejection projection screen compatible with its UST projector lineup, offered at prices from $869 to $999 — to be paired with the LTV-3500 Pro as an integrated home theater package; and

**(3) The AWOL Vision LTV-2500 4K Dolby Atmos Triple Laser Projector** — Defendant's mid-range UST projector, featuring Dolby Atmos sound integration, DTS Virtual:X surround capability, and 4K tri-chroma laser clarity, with an MSRP of $2,999 (street price approximately $2,699) — as a gift for her adult son, who resides with her and shares the household's entertainment space.

Plaintiff's shopping objectives were concrete, personal, and time-sensitive. She intended to review the product descriptions, images, technical specifications, compatibility information, pricing, warranty terms, and purchase options for each item before completing a transaction.

9.      Despite multiple attempts, Plaintiff was unable to independently complete her objectives due to persistent access barriers. Independent SortSite audits of www.awolvision.com, conducted by Plaintiff's counsel in June 2026, revealed that **443 pages** across Defendant's website had overall quality issues — with **424 pages** reflecting accessibility problems, **424 pages** containing broken links or other errors, **419 pages** exhibiting browser-specific compatibility issues, and **432 pages** displaying W3C standards violations — out of 4,709 total pages and files checked. The SortSite report's overall quality benchmark places Defendant's website as worse than average in overall quality and browser compatibility. Additionally, the comprehensive Accessibility Validation Report identified pervasive WCAG 2.1 violations throughout the site, including missing alternative text on product images, unlabeled form controls, inaccessible buttons, contrast failures, improper

heading structures, and broken ARIA references that rendered key product pages entirely unreadable to screen-reading software. The Broken Link Report for www.awolvision.com confirmed widespread broken navigation targets across product, category, and support pages — barriers that physically severed Plaintiff's navigation path on each of her three visit attempts.  Exhibit B

10.    The accessibility barriers were pervasive across each page Plaintiff attempted to use. On the product page for the LTV-3500 Pro — from which Plaintiff sought to learn the projector's specifications, evaluate available bundling options, and initiate a purchase — Plaintiff's NVDA screen reader encountered unlabeled product image elements, empty interactive buttons devoid of any accessible name, and form controls with no associated labels. The missing alternative text on product images meant that NVDA announced only "image" with no context, providing Plaintiff with no description of the projector's physical design, connectivity ports, or key distinguishing features. The unlabeled "Add to Cart" and checkout navigation buttons — confirmed as a class of defect throughout the site by the Accessibility Validation Report — caused NVDA to announce only "button" with no context, preventing Plaintiff from distinguishing the purchase action from other on-page controls. On the screen page for the Cinematic ALR Screen, Plaintiff encountered broken navigation links confirmed by the Broken Link Report, which severed the navigation chain she relied upon to proceed from the product listing to the specifications and order pages. On the page for the LTV-2500 Dolby Atmos projector — which Plaintiff sought to configure and purchase as a gift — she encountered additional WCAG violations including inaccessible acoustic and color option form fields, improperly structured heading hierarchies that left the product's key attributes unreachable via sequential keyboard navigation, and low-contrast text rendering the product's pricing, warranty, and promotional information illegible to low-vision users. These barriers prevented Plaintiff from obtaining the same product information and transactional access available to sighted users.

11. Defendant operates a direct-to-consumer e-commerce platform through which consumers can browse, configure, and purchase premium 4K ultra short throw laser projectors, ambient light rejection projection screens, and integrated home theater packages. Plaintiff specifically sought out Defendant because Awol Vision occupies a singular and compelling position in the consumer electronics market: it is among the only companies in the United States marketing and selling triple-laser RGB UST projectors — the most advanced home projection technology currently available — directly to consumers at prices significantly below traditional specialty AV retailers and luxury home theater brands. Defendant's LTV-series and Aetherion projectors cannot be replicated in their combination of technology, form factor, and direct price by any other commonly available retailer. Moreover, Defendant's website is the **exclusive** primary point of sale for its products in the United States, with no national retail chain carrying the full line. As a legally blind consumer, Ms. Russo relies on accessible digital interfaces and descriptive labeling to make informed purchasing decisions. Defendant's failure to provide an accessible website denied her equal access to the goods and services it provides to non-disabled customers.

12. Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that www.awolvision.com becomes and remains accessible to blind and visually impaired users. Plaintiff remains genuinely and concretely interested in purchasing the products offered by Defendant and intends to return to the website as soon as it is remediated so that she may independently browse, evaluate, and purchase products for herself and her family. Without remediation, Plaintiff and other blind consumers remain excluded from equal participation in Defendant's online marketplace.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

14.     This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

15.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District, accessed Defendant's website from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where the plaintiff experiences the discriminatory denial of access to a website. *See Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); *see also Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

16.     Defendant is subject to personal jurisdiction in this District because Awol Vision Technology LLC transacts substantial business within the State of New York and within this District by operating its e-commerce website, www.awolvision.com, which is accessible to and marketed toward New York consumers, allows users to browse product collections, review technical specifications, configure and customize orders, and complete purchases with direct shipping to New York addresses. Defendant derives significant revenue from sales to consumers in this State. *See Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

17.     The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements

apply to all services offered by public accommodations, including those offered online.

18.    This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

19.    Plaintiff **Susan Russo** is, and at all relevant times was, a resident of Manhattan, New York County, New York, within the Southern District of New York. Ms. Russo is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 *et seq.*, the New York State Human Rights Law, Article 15 of the N.Y. Executive Law §§ 290 *et seq.*, the New York State Civil Rights Law §§ 40 *et seq.*, and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-107 *et seq.* As confirmed by her treating physician, Dr. Jonathan Feistmann, M.D., of N.Y.C. Retina, in the New York State Report of Legal Blindness dated April 25, 2025, Ms. Russo suffers from diabetic retinopathy, a permanent and progressive condition that severely restricts her visual acuity and visual fields and requires the use of screen-reading software to access digital content independently. Ms. Russo resides at 110 Lexington Avenue, New York, New York 10016.

20.    Plaintiff is a proficient user of screen-reader technology, including NVDA, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because she cannot visually interpret printed or digital information without assistive technology, Ms. Russo depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen-reading software.

21.    Upon information and belief, Defendant **Awol Vision Technology LLC** is a limited liability company organized and registered under the laws of the State of Florida, with its current principal place of business at 8631 Waterside Court, Parkland, Florida 33076, as reflected in its

2025 Florida Annual Report filed with the Florida Secretary of State on February 5, 2025 (Document No. L22000200327, FEI No. 88-2310905). Defendant's registered agent in Florida is Steven E. Shulman, 17378 Ristretto Trail, Boca Raton, Florida 33496. Defendant owns, operates, and controls the commercial website www.awolvision.com, through which it markets, displays, and sells premium 4K laser projectors, ambient light rejection screens, and integrated home theater systems to consumers throughout the United States, including residents of New York.

22.     Defendant transacts substantial business within the State of New York and within this District by offering its e-commerce goods and services to New York consumers, shipping products directly to New York addresses, and deriving significant revenue from New York-based transactions. Defendant's website is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7), because it is a service and sales platform offered to the general public.

23.     At all relevant times, Defendant was responsible for designing, constructing, maintaining, and operating its website in a manner that complies with federal, state, and local disability-rights laws. Defendant failed to do so, resulting in the denial of full and equal access to Plaintiff and other blind and visually impaired consumers.

**NATURE OF ACTION**

24.     The Internet has become an essential tool for daily life, serving as a primary means of shopping, banking, learning, communicating, and accessing goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in modern society on equal terms. The inability to access digital content independently results in exclusion from the digital marketplace and denies blind consumers the independence and autonomy that sighted users take for granted.

25.     Blind and visually impaired individuals access websites using screen-reading

software, which converts digital content into synthesized speech or refreshable Braille. This technology is the only method by which blind users can independently navigate the internet. For screen-reading software to function, website content must be capable of being rendered into text. When websites lack alternative text for images, contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain broken ARIA references, blind users cannot navigate, understand, or interact with the website.

26.    The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

27.    Congress enacted the Americans with Disabilities Act to eliminate discrimination against individuals with disabilities and to ensure full integration, independent living, and equal opportunity. The ADA's protections extend to digital spaces. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online.

28.    Defendant Awol Vision Technology LLC owns and operates the commercial website www.awolvision.com, through which it markets, displays, and sells premium 4K laser projectors, ambient light rejection screens, and integrated home theater systems directly to consumers nationwide. Defendant's brand is built on direct-to-consumer access to its exclusive projector lineup and premium home theater ecosystem. Because Defendant sells primarily through its e-commerce

website and does not maintain a national physical retail presence carrying its full product line, the website is the primary, and in most markets the **only**, means by which consumers can access, evaluate, and purchase its products. For blind consumers such as Plaintiff, the inability to independently access Defendant's website results in complete exclusion from Defendant's goods and services.

29.    Plaintiff **Lisa Russo** is a legally blind consumer who relies exclusively on screen-reading software and keyboard navigation to access digital content. Because she cannot visually interpret printed or digital information without assistive technology, Ms. Russo depends on businesses to design and maintain their websites in a manner that is compatible with screen-reader technology. When websites are not coded to provide meaningful alternative text, proper ARIA labeling, accessible navigation, and programmatically determinable structure, blind users are denied the ability to browse, evaluate, and purchase goods independently.

30.    On **February 11, 2026**, **March 24, 2026**, and **May 19, 2026**, Plaintiff attempted to access Defendant's website using NVDA screen-reading software in order to research and purchase three specific products:

**(a) The AWOL Vision LTV-3500 Pro 4K Triple Laser UST Projector (MSRP $3,999):** Ms. Russo has been profoundly interested in upgrading her Manhattan apartment's entertainment technology. As a legally blind consumer, she relies heavily on high-quality audio-visual media — including audio-described films, streaming services with accessibility overlays, and content viewed through voice-controlled smart TV platforms — as a primary form of entertainment and independent enrichment. The LTV-3500 Pro's triple-laser RGB engine produces vivid, sharp images at maximum brightness even in ambient light, and its ultra short throw form factor means it can be positioned only inches from a wall — making it ideal for small Manhattan living spaces. Ms. Russo chose the LTV-3500 Pro over competing projector brands because Awol Vision is one of the few companies

marketing and selling this class of technology directly to consumers in the United States at accessible price points, with no intermediary retailers marking up the price. She intended to use the projector with voice-activated media players already in her home, enabling her to access content without visual screen navigation. However, when she attempted to reach the product page for the LTV-3500 Pro on February 11, 2026, and again on March 24, 2026 and May 19, 2026, her NVDA screen reader encountered missing alternative text on all product images — providing no description of the projector's hardware appearance, port layout, or design — and unlabeled interactive buttons, including the "Add to Cart" and configuration controls, which NVDA announced only as "button" with no context. These barriers directly prevented Ms. Russo from independently evaluating or initiating the purchase of the specific product she sought.

**(b) The 100"–150" Cinematic ALR Screen (from $869):** Plaintiff also sought to purchase Defendant's compatible ambient light rejection ("ALR") projection screen — engineered specifically for use with Awol Vision's UST projectors — to pair with the LTV-3500 Pro in an integrated home theater installation. For a legally blind consumer, purchasing matched components from the same manufacturer is essential: screen-projector compatibility eliminates the risk of mismatched specifications that would require sighted technical troubleshooting after delivery. Defendant's Cinematic ALR Screen is designed with BlackGrid TPU material and a 0.6dB gain coefficient that is calibrated specifically to the color and brightness output of the LTV-series projectors. Ms. Russo could not obtain an equivalently matched screen-projector ecosystem from any other source at comparable pricing. However, when she attempted to navigate to the screen product page and its associated specifications and bundle ordering options, the Broken Link Report for www.awolvision.com confirmed that multiple navigation targets throughout the site — including in the collections and product sub-pages she was traversing — resulted in HTTP errors and broken link failures. These broken navigation paths severed Ms. Russo's screen-reader-guided path before

she could reach the screen product details or add the item to her cart, directly preventing her from completing the bundle purchase she intended.

(c) The AWOL Vision LTV-2500 4K Dolby Atmos Triple Laser Projector (MSRP $2,999, street price approx. $2,699): Ms. Russo additionally sought to purchase the LTV-2500 as a gift for her adult son, who shares her household. The LTV-2500's integration of Dolby Atmos and DTS Virtual:X surround processing — features that deliver premium spatial audio without requiring separate speaker hardware — made it the ideal gift for a son who would benefit from cinematic audio quality without extensive setup complexity. The LTV-2500 also carries a 107% BT.2020 color gamut and tri-chroma laser technology that rivals projectors sold at two to three times its retail price. Plaintiff selected the LTV-2500 from Awol Vision's direct-to-consumer website because the combination of technology, warranty coverage, U.S.-based 24/7 customer service, and direct pricing cannot be replicated through other retailers. However, when she attempted to access the LTV-2500 product page, she encountered pervasive WCAG violations confirmed by the Accessibility Validation Report: unlabeled form fields for audio and configuration options, inaccessible heading structures rendering the product's technical specifications unreachable by sequential keyboard navigation, and contrast failures on pricing and promotional text. NVDA could not convey the product's Dolby Atmos capabilities, compatibility requirements, or available customization options, making it impossible for Ms. Russo to evaluate whether the product met her son's needs or to initiate a purchase.

31.    Plaintiff's shopping objectives were concrete, personal, and time-sensitive. She intended to review the product descriptions, product images, technical specifications, compatibility information, pricing, warranty terms, and purchase options for each item before completing a transaction. However, despite three separate attempts on three separate dates, Plaintiff was unable to independently complete her objectives due to pervasive and persistent access barriers on each of

the pages she attempted to use.

32.    The SortSite Site Quality Report for www.awolvision.com, generated June 30, 2026, revealed that out of **4,709 pages and files checked**: **443 pages** had overall quality issues (worse than average benchmark), **424 pages** contained broken links or other errors, **424 pages** exhibited accessibility problems, **419 pages** reflected browser-specific compatibility issues (worse than average benchmark), and **432 pages** had W3C standards violations. These figures represent pervasive, structural, site-wide deficiencies — not isolated anomalies — affecting more than nine percent of the website's entire checked inventory.

33.    The Accessibility Validation Report for www.awolvision.com, generated June 30, 2026, identified a systematic pattern of WCAG 2.1 Level A and AA violations throughout the site, including but not limited to: (a) missing and inadequate alternative text on product and promotional images across the site's projector and screen product pages, preventing blind users from receiving any description of the visual characteristics of the products offered; (b) unlabeled and empty interactive form controls, including buttons and input fields on product pages and in the checkout flow, which caused NVDA to announce only "button" or "edit" without any contextual label, making it impossible to distinguish product configuration controls from navigation controls or purchase triggers; (c) improper and inconsistent heading hierarchies across product, collection, and informational pages that prevented sequential keyboard navigation from reaching key content sections; (d) very low contrast text used for pricing, promotional, and specification information, rendering that content inaccessible to low-vision users; (e) broken ARIA references that severed the programmatic relationship between form labels and their associated controls; and (f) inaccessible and unlabeled audio and technical option selectors on projector product pages, preventing blind users from independently configuring and ordering the products.

34.    The Broken Link Report for www.awolvision.com, generated June 30, 2026,

confirmed numerous failed HTTP navigation targets throughout the site's product, collection, and informational pages, including broken links that disrupted the navigation chains Plaintiff relied upon on each of her three visit attempts to move from category pages to product specifications, to bundle configuration, and to checkout. These broken navigation paths are an independent and additional basis for the denial of equal access.

35.     Defendant's failure to design, construct, maintain, and operate its website in a manner compatible with screen-reader technology constitutes discrimination under Title III of the ADA. Defendant's inaccessible website denies blind consumers equal access to the goods and services it offers to the general public and prevents blind users from participating in the digital marketplace on equal terms.

36.     Plaintiff remains highly and concretely interested in purchasing the LTV-3500 Pro projector, the Cinematic ALR Screen, and the LTV-2500 Dolby Atmos projector from Defendant and **intends to return to the website as soon as it is made accessible**. Pursuant to *Calcano v. Swarovski North America Ltd.*, 36 F.4th 68 (2d Cir. 2022), Plaintiff's intent to return is not speculative — it is grounded in her specific, documented desire to purchase identified products that remain available on Defendant's website, her established pattern of attempting to access www.awolvision.com on three separate occasions, and her concrete reasons for choosing Awol Vision's exclusive products over all available alternatives. The persistent barriers she encountered deter her from attempting to use the website again until it is remediated. Plaintiff's injury is ongoing because Defendant continues to operate an inaccessible website without a policy or plan to ensure accessibility. She has not purchased equivalent products elsewhere — no other vendor offers the combination of triple-laser UST projection technology, integrated sound processing, manufacturer-matched ALR screens, and direct-to-consumer pricing that she seeks from Awol Vision — and she will return as soon as remediation enables her to access, evaluate, and complete the purchases she

was denied.

## CLASS ACTION ALLEGATIONS

37.    Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of all legally blind individuals in the United States who have attempted to access Defendant's website, www.awolvision.com, and, as a result of Defendant's failure to design and maintain the website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

38.    Plaintiff also seeks certification of a New York subclass consisting of all legally blind individuals residing in the State of New York who have attempted to access Defendant's website and were denied equal access to the goods, services, and information offered thereon.

39.    The members of the Class and Subclass are so numerous that joinder of all members is impracticable. The precise number of Class members is unknown to Plaintiff but is believed to be in the thousands, given the size of the blind and visually impaired population, the national reach of Defendant's website, and the widespread and persistent nature of the access barriers identified across 424 of Defendant's pages.

40.    Common questions of law and fact exist among the Class and Subclass, including but not limited to: (a) whether Defendant's website is a "place of public accommodation" under Title III of the ADA; (b) whether Defendant's website denies blind and visually impaired individuals full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations; (c) whether Defendant's failure to comply with WCAG 2.1 constitutes a denial of equal access; (d) whether Defendant has failed to adopt policies and practices reasonably calculated to ensure ongoing

accessibility; and (e) whether injunctive relief is warranted to require Defendant to make its website accessible.

41.     Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, attempted to access Defendant's website, encountered access barriers, and was denied equal access to Defendant's goods and services.

42.     Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in disability rights litigation, class actions, and website accessibility cases. Plaintiff has no interests antagonistic to the Class.

43.     Defendant has acted or refused to act on grounds generally applicable to the Class, making injunctive relief appropriate with respect to the Class as a whole under Rule 23(b)(2).

44.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive and declaratory relief appropriate with respect to the Class as a whole.

45.     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

46.     Plaintiff,  **SUSAN RUSSO**, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

47.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of

any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

48.    Defendant's Website, www.awolvision.com, is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

49.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

50.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, *inter alia*:

[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)–(iii).

51.    The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under

the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)–(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, www.awolvision.com; has not been provided services that are provided to other patrons who are not disabled; and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief, Defendant has received constructive notice of these accessibility deficiencies through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

52.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law — "NYSHRL")**

53.    Plaintiff, **SUSAN RUSSO**, on behalf of herself and the Class and New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

54.    At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendant.

55.    Plaintiff, at all times relevant to this action, as a result of her loss of vision due to diabetic retinopathy, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

56.    Defendant, at all relevant times to this action, owns and operates a place of public

accommodation, the subject Website, www.awolvision.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

57.    Plaintiff has visited the Website, www.awolvision.com, on a number of occasions, specifically on February 11, 2026, March 24, 2026, and May 19, 2026, and has encountered barriers to her access that exist and persist.

58.    Under Article 15 N.Y. Executive Law § 296(2)(a), "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

59.    Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

60.    Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the site known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not

disabled. Article 15 of N.Y. Exec. Law § 296(2)(c).

61.     The Defendant's discriminatory practice also includes "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

62.     Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is a well-established guideline for making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

63.     Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

64.     Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

65.     Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

66.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes Defendant denies, that Defendant's website contains access barriers denying blind customers full and equal access to the products, services, and facilities offered through the website.

67.    A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law — "NYCRL")**

68.    Plaintiff, **SUSAN RUSSO**, on behalf of herself and the New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

69.    Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41.

70.    Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

71.    No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by any person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

72.    Section 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, Plaintiff is disabled under the N.Y. Civil Rights Law.

73.    Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as

Defendant's Website, www.awolvision.com, is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight-impaired.

74.     Defendant intentionally and willfully failed to remove the barriers on its Website, discriminating against the Plaintiff and Subclass and preventing access in violation of NYCRL § 40.

75.     Defendant has failed to take any steps to halt and correct its discriminatory conduct and continues to discriminate against the Plaintiff and the Subclass members.

76.     Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . . in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*

77.     Plaintiff and the Subclass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law — "NYCHRL")**

78.     Plaintiff, **SUSAN  RUSSO**, on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

79.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions,

of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation."

80.     Defendant is subject to NYCHRL because it owns and operates the Website, www.awolvision.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

81.     Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) by refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated therein to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

82.     Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

83.     Defendant's actions constitute willful intentional discrimination against the New York City Subclass based on disability in violation of N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that it is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

84.     Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

85.     As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations, and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

86.     Defendant's actions violate the NYCHRL, and therefore Plaintiff invokes the right to injunctive relief to remedy the discrimination.

87.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

88.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

89.     Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

90.     Plaintiff, SUSAN RUSSO, on behalf of herself and the Class and New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

91.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access

barriers denying blind customers the full and equal access to the products, services, and facilities of the Website, which Defendant owns, operates, and controls, and fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182 *et seq.*, N.Y.C. Admin. Code § 8-107 *et seq.*, Article 15 of the N.Y. Executive Law §§ 296(2) *et seq.*, and N.Y. Civ. Rights Law §§ 40 *et seq.*, prohibiting discrimination against the blind and visually impaired.

92.     A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 *et seq.*;

- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.awolvision.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG 2.1 Level AA-conforming accessibility measures;

- A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;

- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and appointing her counsel as Class Counsel;

- Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under the New York City Human Rights Law, the New York State Human Rights Law, and the New York State Civil Rights Law;

- Pre-judgment and post-judgment interest;

- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and

- Such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
      July 1, 2026

 

Respectfully submitted,
JOSEPH & NORINSBERG, LLC
*/s/ Robert Schonfeld*
Robert Schonfeld, Esq.
Attorneys for Plaintiff
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com